QUANAH, A. & P. RY. CO. v. DRUMMOND.

(Court of Civil Appeals of Texas. Amarillo. April 13, 1912.)

1. EVIDENCE (§ 378*) — DOCUMENTARY—LETTERS—PROOF OF EXECUTION.

Proof of the execution of letters is necessary to render them admissible in evidence.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1648–1655; Dec. Dig. § 378.*]

2. EVIDENCE (§ 333*) — DOCUMENTARY—LETTERS—PROOF OF EXECUTION.

Under Rev. St. 1895, art. 4578, which provides that certified copies of any classification, rates, rules, regulations, or orders of the railroad commission or printed copies published by authority of the commission shall be admissible in evidence and sufficient to establish the fact that any charge, rate, etc., is an official act, printed copies of letters signed by one of the commissioners are not rendered admissible as the commission can act only as a body and not by its individual members.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1247–1257, 1259–1265; Dec. Dig. § 333.*]

3. CARRIERS (§ 200*)—CARRIAGE OF GOODS—EXCESSIVE RATES.

In determining whether freight rates charged are excessive, the rate which was in effect at the time the bill of lading was executed will control.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 901–905; Dec. Dig. § 200.*]

4. CARRIERS (§ 12*)—CARRIAGE OF GOODS—CONTRACT TO ESTABLISH.

Where cars of lumber were billed to point Q., "final destination 'S.,'" the contract was for shipment only to Q. where S. was on a new line which was not in operation, and to which no freight rates had been established at the date of the contract.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 7–20; Dec. Dig. § 12.*]

5. CARRIERS (§ 12*)—CARRIAGE OF GOODS—RATES—THROUGH SHIPMENTS.

Where by the rulings of the railroad commission a through published rate on a new line would become effective as to shipments reconsigned to points thereon, though the shipments originated before the opening of the line and the publication of the rates, a shipment made under such circumstances would be entitled to a through rate only, where the reconsignment was made in compliance with classification rule No. 35, promulgated by the railroad commission, which provides that a request for such a reconsignment must be made within 48 hours after arrival, not including Sundays or legal holidays.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 7–20; Dec. Dig. § 12.*]

6. CARRIERS (§ 100*)—CARRIAGE OF GOODS—RATES—OVERCHARGES.

Where in order to obtain cars of lumber for forwarding to destination it became necessary for the forwarding line to pay a connecting railroad demurrage charges, the consignee was bound on an implied contract to reimburse the carrier for the payment made, and cannot complain of it as an overcharge.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 427–433; Dec. Dig. § 100.*]

Appeal from Cottle County Court; W. E. Prescott, Judge.

Action by T. M. Drummond against Quanah, Acme & Pacific Railway Company. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

Fires, Decker, Clarke & John, of Quanah, and Brown & Warlick, of Paducah, for appellant. Whatley & Hawkins, of Paducah, for appellee.

HALL, J. Appellee brought suit against appellant for $725.76 for overcharges for freight and demurrage on seven cars of lumber shipped by several consignors to him. The facts are that appellee was conducting a lumber yard at Swearingen, Tex., an intermediate station on the line of the appellant railway. Appellant's line of railway runs from Quanah to Paducah, a distance of about 50 miles. The cars of lumber upon which appellant is being sued for overcharges and demurrage originated in Texas, and with one exception were billed to Quanah, "final destination Swearingen," and all arrived at Quanah prior to October 30, 1909. The uncontradicted evidence is that on November 8, 1909, the railroad commission promulgated through rates to Swearingen, Tex., on intrastate shipments of lumber, under the provisions of which there would have been due on the cars in question 22½ cents per hundredweight. Under the rate already existing, there was due on each car from the point of origin to Quanah freight at the rate of 21¼ cents per hundredweight. The local rate, as fixed by the commission and promulgated on November 8, 1909, from Quanah to Swearingen was 13 cents per hundredweight. At the time the said rates were put into effect, on November 8, 1909, appellant's line of road was not completed. It had not notified the public and other carriers that it was open for business beyond the station of Lazarre, 15 miles beyond Quanah, and it is further uncontradicted that the use of the line, even to Lazarre, was by virtue of a special agreement, made with the construction company which was at that time at work upon the line. It further appears that the line was not taken over from the construction company until January 1, 1910, but that by special arrangement with the construction company appellant began to run freight trains as far as Swearingen on November 18, 1909, on which date the appellee's cars of lumber were transported and delivered to him. Upon the arrival of appellee's cars of lumber at Quanah, the Ft. Worth & Denver City Railway Company notified him by letter of their arrival, and he at once notified said company

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

to deliver the said cars to appellant railway company for transportation to Swearingen, and was informed by appellant that it could not accept the cars on account of having no line open to Swearingen. It does not appear upon whose application the rates to Swearingen were published by the commission further than that appellant's general freight agent testified it was not done upon application of appellant.

Over the objection of appellant, appellee introduced in evidence three letters as follows: One dated Austin, Tex., March 10, 1911, addressed to appellee's attorney, and signed John L. Wortham, commissioner, inclosing a printed copy of a letter dated September 20, 1910, addressed to certain attorneys at San Angelo, signed O. B. Colquitt, commissioner, the substance of which is as follows: "The rate of 21¼ cents on lumber to points on the Concho, San Saba & Llano Railway became effective with the opening of the line on August 1, 1910. With reference to shipments of lumber billed from origins prior to August 1st, which moves to Sterling City subsequent to the opening of this line, I beg to quote you the following as the ruling of the commission in similar cases: Where the shipments are billed from origin prior to August 1st and are consigned to Sterling City, charges should be assessed on the basis of the combination to and from San Angelo. This is in line with all previous rulings of the commission that a shipment should take the rate in effect on date the bill of lading therefor is signed and there being in this case no through rate to Sterling City, owing to the fact that the line had not been opened the charges must, as above indicated, be assessed on the basis of a sum of the rates to and from San Angelo. If, however, the shipments all told, although billed from origin prior to August 1st, were consigned to San Angelo and after arrival at that point were, after August 1st, reconsigned under classification rule 35, to Sterling City, the through published rate from origin to Sterling City, effective August 1st, would apply. With reference to the shipments that may have been shipped prior to August 1st, and consigned to Sterling, further authority from the commission would be necessary for the railway company to protect the through published rate of 21¼ cents, but this authority cannot be granted except upon an application presented by the railway company and should you so desire, you might refer the papers to the company with a request that such application be made." There was also inclosed by Commissioner Wortham the following letter: "December 8, 1909. William Cameron & Co., Waco, Texas—Gentlemen: Referring to your letter of the 6th instant in which you ask if demurrage should be charged on car load shipments held in transit covered by bills of lading, issued to a destination on a new line which has not been opened for business to such destination, we have to advise that there is no provision in demurrage rules for demurrage in such cases, but the originating line should certainly not accept shipments for a station on a new railroad until they have official notice that such station is open for business, and in this connection, while we recognize the bill of lading as a contract between the shipper and the carrier, the terms of such contract cannot be enforced on an impossible proposition, such as delivering a shipment to a station not in existence. However, the above with respect to demurrage in transit answers your inquiry. [Signed] Wm. D. Williams, Commissioner."

[1] The introduction of the letters was objected to because their execution had not been proven, because they were not certified, and because if they are rulings on rates and demurrage they are ex parte without notice to appellant, and purport to be the act of only one commissioner. Proof of the execution of letters by the writer is a prerequisite to their admission in evidence as letters written by him. Ex parte Denning, 50 Tex. Cr. R. 629, 100 S. W. 401; Henry v. Vaughan, 46 Tex. Civ. App. 531, 103 S. W. 192.

[2] The record indicates that the last two letters above quoted were printed copies of letters sought to be introduced in evidence, presumably under Revised Statutes, art. 4578, which provides that, upon application of any person, the commission shall furnish certified copies of any classification, rates, rules, regulations, or orders, and such certified copies or printed copies published by authority of the commission shall be admissible in evidence in any suit and sufficient to establish the fact that any charge, rate, rule, order, or classification therein contained, and which may be in issue in the trial, is the official act of the commission. This article of the statute is a rule of evidence and, according to our construction of it, none of the letters sought to be introduced were admissible in evidence. The railroad commission, like a commissioners' court, board of trustees, or any other official body, cannot act through its individual members but must act as a body. Jackson-Foxworth Lumber Co. v. Hutchinson County, 88 S. W. 412. The letters sought to be introduced were certainly not certified copies of any rules or orders, and if admissible at all must come under that part of the act provided for printed copies published by authority of the commission. In our opinion they were not admissible as the printed copies of any orders made by the commission because they did not purport to be the official act of the commission, but merely letters signed by one of the commissioners. This error will require a reversal of the judgment, and, in view of another trial, we will discuss the

remaining assignment of error and the propositions thereunder.

Classification rule No. 35, promulgated by the commission and introduced in evidence, in so far as the same is applicable to this case is as follows: "Destination of any car load shipment originating at a point in Texas may be changed in transit or at points in Texas at a charge of $1 per car for such services, when the substituted destination is a point in Texas, provided the contents of the car have not been disturbed (further than inspected) or removed at the first destination, and that the request for change is made within 48 hours (Sundays and legal holidays excluded) after notice of arrival at first destination. Notice of desire to change must be in writing and may be given to the agent at first destination, to the auditor or auditors of the companies transporting, or to any other agent or officer designated to receive the same. If the rate to substituted destination is higher than that to the original destination, such higher rate, plus extra service charge, if any, will apply."

The record also contains the following ruling on Rule No. 35: "The railroad commission of Texas, having been informed that some shippers are practicing an abuse of the rule for changing destination of car load shipments in transit, or at first destination, by having the shipments billed to themselves or some reconsigning agent at a point between origin and the real or final destination of the shipments, such intermediate point being on a line of railroad which extends to consignee's place of storage or unloading at final destination, so that switching charges at such final destination may be avoided, the commission hereby rules and so orders that such practice is an abuse of the privileges accorded by said rule, and that in .cases where such practice or abuse occurs the through rate to be collected on the shipment shall be a combination of the regular tariff rates applying from origin. to such intermediate point, and from such point to final destination."

It appears from the testimony that the cars in question were received by appellant upon the special request of appellee, and that in order to obtain the cars it was necessary for appellant to pay to the Ft. Worth & Denver City Railway Company the demurrage and freight charges due it before delivery, and it further appears that all of the demurrage was paid by appellant to its connecting carrier, the Ft. Worth & Denver City Railway Company.

[3, 4] There was also introduced in evidence the demurrage and storage rules in effect by the railroad commission of Texas, which required a charge of $1 per day per car after the first 48 hours, Sundays and legal holidays excluded. Under which rules the Ft. Worth & Denver City Railway Com-

pany, it seems, had assessed the demurrage . charges which were collected by appellant, and paid over to said Ft. Worth & Denver City Railway Company, and which form part of the basis of this suit. It appears from the record that, under the rules of the railroad commission (which is also the law), the freight rate in effect at the time the bill of lading is executed is the rate which will control. The only rate in effect when the bills of lading for the cars in question were executed was the one from points of origin to Quanah. Appellant's line was not open to Swearingen, and certainly no agent of the initial carrier had any right to make a contract of shipment by rail to a station on a line not yet open to operation. So it follows that in legal effect the several shipping contracts were simply from point of origin to Quanah.

[5] If it should appear upon another trial that the rulings of the commission are as outlined in the letter of Commissioner Colquitt, then there has been no overcharge of freight, unless it be shown that the cars were reconsigned within the required time under classification rule No. 35.

[6] Appellee having constituted appellant railway company his agent authorized to receive the cars from the Ft. Worth & Denver City Railway Company, and forward to him at Swearingen and in order to obtain possession of said cars, it being necessary to pay the Ft. Worth & Denver City Railway Company demurrage charges, appellee was . bound by implication to reimburse appellant for such charges, and is in no position to demand of appellant the demurrage paid out upon such implied contract.

The Ft. Worth & Denver City Railway Company not being a party to this action, it is unnecessary to a decision of this appeal to pass upon the legality of such charges, even if it were proper for us to do so, and we will not decide that issue further than as above stated.

Because of the errors pointed out, the judgment is reversed and the cause remanded.